| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: August 10, 2017 |

------------------------------------------------------------ X
:
DOMINIQUE JEAN PHILIPPE :
:
                       Petitioner, :
:
        -v- :        12-cr-802 (KBF)
:         16-cv-7918 (KBF)
:
UNITED STATES OF AMERICA, :       <u>OPINION & ORDER</u>
:
:
                     Respondent. :
:
------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

      Dominique Jean Philippe, currently incarcerated at U.S.P. Allenwood, brings a petition under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. Philippe was sentenced on January 31, 2014 to life imprisonment followed by a seven-year consecutive sentence for kidnapping two victims—one of whom was kept for multiple days and sexually assaulted and both of whom were physically harmed and held for ransom—in an effort to rob one of the victims of a significant sum of money. Phillippe contends that he pled guilty to the kidnapping and robbery charges based on ineffective assistance of counsel, and that his counsel rendered ineffective assistance before and during his sentencing hearing.

      Having carefully reviewed Philippe's petition and the record, the Court finds that his motion is without merit and should be summarily denied, without requesting additional briefing from the Government or petitioner. <u>See</u> Fed. R. Governing Sec. 2255 Proceedings in the U.S.D.C. 4(b) ("If it plainly appears from

the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party."). Thus, for the reasons set forth below, Philippe's motion to vacate is DENIED.

I.  BACKGROUND

On October 23, 2012, Philippe, along with two co-defendants,[1] was charged in a five-count indictment for conspiring to commit a Hobb's Act robbery (Count One); committing a Hobb's Act robbery (Count Two); conspiring to kidnap and hold for ransom a person using a means, facility and instrumentality of interstate commerce (Count Three); kidnapping and holding for ransom a person using a means, facility and instrumentality of interstate commerce (Count Four); and, during and in relation to a crime of violence—namely, the robbery offenses in Counts One and Two and the kidnapping offenses in Counts Three and Four—knowingly brandishing firearms in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count Five). (12-cr-802 ECF No. 2.)

The facts of Philippe's conduct have been set down extensively elsewhere. (See, e.g., 12-cr-802 ECF No. 91 at 2-6 (Court's factual findings).) In short, on September 2, 2012, Philippe and a co-defendant, Trevor Cole, accosted a woman at gunpoint in the common area outside her apartment and forced her into her apartment. Philippe and Cole bound her with duct tape and held her captive and

---

[1] The Government entered into a nolle prosequi with one of the defendants, Jeremy Acevedo, on May 2, 2013. (12-cr-802 ECF No. 30.)

2

bound until Tuesday, September 4, 2012. During that time, additional accomplices joined Philippe and Cole in the apartment. Several of the men sexually assaulted the female victim and one urinated on her. The robbers forced the victim to call her boyfriend to induce him to come to the apartment. When the victim's boyfriend arrived on Tuesday, he was beaten, hit on the head with a gun and stabbed. The male victim finally gave the men the combination to a safe he kept in another apartment. Some of the robbers went to that location, emptied the safe of its contents ($40,000) and returned to demand that the male victim provide additional money or else they would kill him. Ultimately, Philippe and his accomplices left the premises after unsuccessfully trying to call the male victim's mother to steal more money.

Philippe's trial was scheduled to begin on September 9, 2013. (See 12-cr-802 ECF No. 44.) That morning, Philippe changed his plea from not guilty to guilty after receiving a Pimentel letter from the Government.[2] In the Pimentel letter, the Government calculated Philippe's offense level under the Sentencing Guidelines as 46, which the Government then reduced to 44 on the presumption that Philippe

---

[2] In United States v. Pimentel, 932 F.2d 1029 (2d Cir. 1991), the Second Circuit encouraged Government attorneys to inform defendants, before accepting plea agreements, "as to the likely range of sentences that their pleas will authorize under the Guidelines." Id. at 1034. Accordingly, in this case, the Government provided Philippe with the Government's calculation of Philippe's offense level, criminal history category and guidelines imprisonment range according to the U.S. Sentencing Guidelines in effect at the time. (See Sen T. 11:4; Opp'n at 2 n.2.) As noted in an earlier Order in this case, "[a] Pimentel letter does not constitute an agreement between the Government and a defendant; and in connection with his sentencing, a defendant is free to argue a different calculation is applicable. A court must separately calculate the appropriate offense level and criminal history category; a court's calculation may be the same as or different from that of either the Government of a defendant." (12-cr-802 ECF No. 91.)

3

would receive a two-level offense level reduction for acceptance of responsibility if he pled guilty. (Plea Transcript ("Plea Tr.") 47:7-15; 12-cr-802 ECF No. 93 at 8.) In addition, the Pimentel letter calculated Philippe's criminal history category as III. (Plea Tr. 47:16-17; 12-cr-802 ECF No. 93 at 8.) The guidelines range associated with these calculations was a life sentence. U.S. Sentencing Guidelines ("U.S.S.G.") Ch. 5 Pt. A (U.S. Sentencing Comm'n 2013).

At Philippe's plea hearing, the Court made sure that Philippe "underst[oo]d the possible penalties that could flow from each of the counts" with which he was charged. (Plea Transcript ("Plea Tr.") 41:23-25.) With respect to each count charged in the Indictment, the Court asked Philippe if he understood the charge against him and the maximum term of imprisonment, fine and forfeiture associated with that charge. (Id. 42:1-47:1.) After confirming that Philippe understood that Counts Three and Four (the kidnapping charges) carried maximum terms of life imprisonment, the Court and Philippe engaged in the following colloquy:

> THE COURT: Do you understand that no one—not the government, not your lawyer—no one can predict what your sentence is going to be because only the Court is going to determine your sentence and I'm not going to do that right now.
>
> DEFENDANT PHILIPPE:[3] Understood.
> . . . .
>
> THE COURT: Now, do you understand that the Court has to independently determine what your appropriate offense level is prior to your sentencing?
>
> DEFENDANT PHILIPPE: Understood.

---

[3] The transcript of Philippe's sentencing hearing refers to Philippe as Phillipe. The spelling has been corrected in the transcription that follows.

4

THE COURT: And, do you understand that my calculation may be the same as what the government has put in its letter that it gave to you or it may be different from that which the government calculated?

DEFENDANT PHILIPPE: Understood.

THE COURT: And, do you understand that that is also true for your Criminal History Category? I have to do my own determination of what your Criminal History Category is and it might be the same or it might be different from what the government has come up with.

DEFENDANT PHILIPPE: Understood.

THE COURT: Do you have any agreement at all with the government?

DEFENDANT PHILIPPE: No, your Honor.

THE COURT: Do you have any agreement or promise from anybody as to what your sentence will be?

DEFENDANT PHILIPPE: No, your Honor.
. . . .

THE COURT: You understand that if you enter a plea you will be bound by that plea no matter what your sentence is?

DEFENDANT PHILIPPE: I understand.

THE COURT: Do you understand that even if your sentence ends up being different from what you hope it, want it to be, what you expect it will be, that once you enter a plea you will be bound by that plea and you can't can withdraw that plea later?

DEFENDANT PHILIPPE: I understand.
. . . .

THE COURT: Has anybody forced you to plead guilty?

DEFENDANT PHILIPPE: No, your Honor.

THE COURT: Has anybody coerced you to plead guilty or threatened you to plead guilty in any way?

DEFENDANT PHILIPPE: No, your Honor.

> THE COURT: Is your decision, if you plead guilty, your own decision?
>
> DEFENDANT PHILIPPE: Yes.
>
> THE COURT: Is it a voluntary decision?
>
> DEFENDANT PHILIPPE: Yes.
>
> THE COURT: Has anybody promised you at all what your sentence might be?
>
> DEFENDANT PHILIPPE: No.

(Plea Tr. 47:2-49:17.) Philippe proffered the factual basis for his guilty plea as to each count and pled guilty to each count. (Id. 49:24-54:14.)

At the plea hearing, the Government expressed that the Court would likely need to hold a <u>Fatico</u> hearing to resolve contested issues of fact that would be relevant to sentencing, which Philippe's counsel confirmed. (Plea Tr. 31:13-16, 55:5-8.) During the <u>Fatico</u> hearing, the parties presented evidence regarding (1) whether the kidnapping involved a sexual assault, and (2) whether the kidnapping included a ransom demand. (Fatico Hearing Transcript, 2:18-25.) Each of these factual assertions, if found to be true by a preponderance of the evidence, were associated with a six-level offense level enhancement under the Sentencing Guidelines. U.S.S.G. §§ 2A4.1(b)(1); 2A4.1(b)(5) (U.S. Sentencing Comm'n 2013). After the hearing, the Court concluded by a preponderance of the evidence that the female victim of the kidnapping was sexually assaulted during the kidnapping and the male victim was subject to a ransom demand. (12-cr-802 ECF No. 86.)

Philippe was sentenced on January 31, 2014. At the sentencing hearing, the Court walked through its calculation of the guidelines sentence applicable to Philippe's conduct. (See Sentencing Transcript ("Sen. Tr.") 10:19-24.) Using the Sentencing Guidelines manual in effect at the time, the Court calculated the offense level associated with Philippe's conduct as 47. (Id. at 23:23-24:1.) In reaching this conclusion, the Court reasserted the factual findings it had previously made following the Fatico hearing—namely, that a ransom demand had been made with respect to the male victim and the female victim had been sexually assaulted. (Sen. Tr. 18:5-19:2. The Court further found, by a preponderance of the evidence, that additional offense level enhancements were warranted because (1) a ransom demand had also been made as to the female victim, and (2) the female victim had suffered serious bodily injury, as defined in U.S.S.G. § 1B1.1(L), separate and apart from the sexual assault. (Id. 15:10-18:4.) The Court then determined that Philippe's criminal history category was V. (Id. 57:18-20.) Taken together, Philippe's offense level and criminal history category resulted in a guidelines sentence of life imprisonment. See U.S.S.G. Ch. 5 Pt A (U.S. Sentencing Comm'n 2013). After considering written and oral statements by the victims, the government, Philippe's counsel, Philippe and his family, along with the requisite factors under 18 U.S.C. § 3553, the Court determined that a life sentence was "the appropriate sentence." (Sen. Tr. 27:19-35:12, 48:22-58:11, 62:9-18.) In explaining its reasoning, the Court focused on the depravity and brutality of Philippe's conduct and the significant number of arrests and convictions Philippe had previously

accrued for serious crimes.  (Id. at 52:5-55:20)  Ultimately, the Court sentenced Philippe to twenty years for Count One; twenty years for Count Two; life imprisonment for Count Three; life imprisonment for Count Four; and seven years for Count Five, with the sentence for Count Five to run consecutively to Philippe's life sentence.  (Id. at 55:20-22.)

Philippe filed a notice of appeal on February 10, 2014.  (12-cr-802 ECF No. 108.)  He argued that his sentence was procedurally and substantively unreasonable (Brief at 28-69, United States v. Cole, No. 14-463 (2d Cir.), ECF No. 60.); his guilty plea was not entered knowingly or intelligently (id. at 69-75); and he was denied effective assistance of counsel (id. at 75-79).  The Second Circuit rejected Philippe's first two arguments on the merits and declined to address the third on direct appeal.  (12-cr-802 ECF No. 262.)  This Court's judgment was thereby affirmed.  (Id.)

Philippe now seeks relief under 28 U.S.C. § 2255 on several grounds, all premised on ineffective assistance of counsel.  First, Philippe argues that his attorney, Benjamin Heinrich, provided ineffective assistance when he advised Philippe to enter a guilty plea as to all charges without the benefit of a plea agreement.  (16-cv-7918 ECF No. 1 at 5-6.)  Second, Philippe contends that his counsel was ineffective in requesting a Fatico hearing to determine whether sentencing enhancements for sexual assault and ransom were appropriate because the Court had already accepted Philippe's "statement of facts and stipulations as to the crimes and his conduct" during his plea allocution.  (Id. at 6-8.)  Third, Philippe

8

contends that the Government should not have been permitted to argue that Philippe was not entitled to a two-point offense level reduction for acceptance of responsibility.  (Id. at 8.)  Fourth, Philippe asserts that his conviction for kidnapping the female victim was legally deficient because no means of interstate commerce was used in furtherance of that crime, and both his trial and appellate counsel provided ineffective assistance by failing to raise this claim earlier.  (Id. at 10-11.)  Fifth, Philippe asserts that his kidnapping charges were "jurisdictionally defective" because the Government should have charged Counts Three and Four (the kidnapping charges) separately with respect to the male and female victims. (Id. at 11-13.)

II. ANALYSIS

Pro se litigants, such as petitioner, are "entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'"  Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).  Nevertheless, a Court may dismiss a petition under § 2255 without holding an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255); see also Fed. R. Governing Sec. 2255 Proceedings for the U.S.D.C. 4(b) ("If it plainly appears from the motion, any attached exhibits, and the record of

9

prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.").

Construed broadly, Philippe's petition asserts that he pled guilty based on ineffective assistance from his counsel and his counsel rendered ineffective assistance before and during his sentencing hearing. (See 16-cv-7918 ECF No. 1.) To prevail on these grounds, Philippe "must [first] show that counsel's representation fell below an objective standard of reasonableness," as measured against "prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 688 (1984). In addition, Philippe must demonstrate that counsel's "deficient performance prejudiced the defense," id. at 687, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. For the reasons set forth below, Philippe cannot demonstrate that his counsel's assistance fell below the constitutional standard, and therefore his petition is DENIED.

A. Advise to Plead Guilty

Philippe claims that Heinrich, his counsel, told him that he ought to plead guilty because the sentencing judge would not apply the same offense-level enhancements that the Government set forth in its Pimentel letter, and therefore Philippe would not be subject to a guidelines sentence of life imprisonment. (16-cv-7918 ECF No. 1 at 5.) Philippe contends that even if Heinrich truly believed that the Court would impose a non-life sentence, he should not have advised Philippe to

plead guilty without the benefit of a formal plea agreement. (Id. at 5-6.) This argument fails on two grounds.

First, Heinrich did not commit constitutional error by advising Philippe to plead guilty without the benefit of a plea agreement. As the Second Circuit noted in its decision affirming this Court's judgment, "there is no constitutional requirement that every defendant at risk of a long sentence must proceed to trial absent incentives from the government." (12-cr-802 ECF No. 262 at 3.) Heinrich's advice to plead guilty may have been motivated by any number of legitimate reasons, including, as he purportedly informed Philippe, that the risk of receiving a life sentence at trial exceeded the risk of receiving a life sentence following a guilty plea. (Id. at 6.) Given the Second Circuit's admonishment that courts reviewing counsel's conduct "may not use hindsight to second-guess [a] strategy choice[]," Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994), and must "indulge[] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," United States v. Jones, 918 F.2d 9, 12 (2d Cir. 1990) (per curiam) (quoting Strickland, 466 U.S. at 689), this Court declines to find that Heinrich's advice regarding Philippe's guilty plea was constitutionally defective.

Second, any claim that Heinrich promised Philippe that he would not receive a life sentence is foreclosed by Philippe's sworn statements at his plea allocution. When confronted with a defendant's claim that he was "misle[]d about the consequences of his plea by his then attorney," a "district court [is] entitled to rely upon the defendant's sworn statements, made in open court . . ., that he understood

11

the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, . . . and had been made no promises except those contained in the plea agreement." United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001) (per curiam); see also United States v. Gonzalez, 647 F.3d 41, 56-57 (2d Cir. 2011) ("Given that solemn declarations in open court carry a strong presumption of verity, and given the strong societal interest in the finality of guilty pleas, a defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw his guilty plea." (internal citations and alternations omitted)).

Here, Philippe confirmed his understanding that he was subject to a life sentence, swore that he had not been coerced to plead guilty, stated that he understood that he could not retract his guilty plea even if his sentence ended up deviating from what he hoped, wanted or expected it would be, and affirmed, twice, that no one had made him any promises regarding what his sentence would be. (Plea Tr. 43:18-49:17.) In such circumstances, the Court need not hold an evidentiary hearing or request an affidavit from Philippe's counsel, as the record makes clear that Philippe is not entitled to relief. See, e.g., Wang v. United States, No. 13-CR-452 (KBF), 2016 WL 1436679, at *6 (S.D.N.Y. Apr. 11, 2016) (rejecting defendant's claim that his attorney had promised he would receive a lower sentence than was imposed, without setting hearing or requesting affidavit from attorney, because defendant's "bare allegations in his petition as to the representations that his counsel made to him cannot overcome his statements under oath during his plea

12

allocution" (internal citation omitted)); Abad v. United States, No. 09 CR. 525 JFK, 2015 WL 4922760, at *4 (S.D.N.Y. Aug. 18, 2015) (same); United States v. Concepcion, No. 06 CR. 743 (DC), 2009 WL 4884095, at *3-4 (S.D.N.Y. Dec. 16, 2009) (same). Philippe's ineffective assistance of counsel claims regarding his guilty plea therefore fail.

B. Fatico Hearing

Philippe's insistence that his counsel erred by requesting a Fatico hearing rests on a flawed understanding of the law. Philippe contends that the Court ought to have relied exclusively on the facts he proffered in his stipulation and plea allocution to determine the appropriate sentence. (16-cv-7918 ECF No. 1 at 6-7.) Because Philippe did not admit to demanding a ransom or committing sexual assault during his plea allocution, he argues that the Court should not have considered such facts in its sentencing determination. (Id.) Philippe misunderstands the distinction between the factual predicates necessary to enter a plea and the factual findings necessary to determine a defendant's appropriate offense level under the Sentencing Guidelines. Before accepting a guilty plea, a district court is obligated to ensure that there is a factual basis for the plea, Fed. R. Crim. P. 11(b)(3)—i.e., "that the conduct which the defendant admits constitutes the offense charged in the indictment." United States v. Maher, 108 F.3d 1513, 1524 (2d Cir. 1997) (quoting McCarthy v. United States, 394 U.S. 459, 467 (1969)). By contrast, before imposing a sentence, the Court must "use the preponderance of the evidence standard . . . [to] find[] facts relevant to sentencing for Guidelines

13

calculation purposes." United States v. Salazar, 489 F.3d 555, 558 (2d Cir. 2007) (per curiam). In making its factual findings, the Court must afford a convicted defendant the "right to challenge the accuracy of the government's proffered facts regarding his participation in the sentencing-enhancing crime," either through "a full-blown evidentiary hearing" or otherwise. United States v. Lee, 818 F.2d 1052, 1056 (2d Cir. 1987). Thus, the Court's decision to hold a Fatico hearing is not "prohibited," as Philippe contends (16-cr-7918 ECF No. 1 at 7), and his counsel's decision to request a hearing constitutes the sort of strategic choice that this Court will not second-guess at the § 2255 stage, see Carmona v. United States, No. 11 CIV. 1071 GBD, 2012 WL 162305, at *2 (S.D.N.Y. Jan. 19, 2012) ("[D]efense counsel's decision to pursue or forego a Fatico hearing is a 'matter of strategy . . . and [courts] presume that such a strategy is sound absent a strong showing to the contrary.'" (quoting United States v. Santiago, 330 F. App'x 234, 238-39 (2d Cir. 2009) (alternation in original)). Philippe's second claim for relief is therefore denied.

C. Acceptance of Responsibility

Philippe next contends that Heinrich should have objected "to the Government's flip-flopping with respect to the 2-point acceptance of responsibility reduction." (16-cr-7918 ECF No. 1 at 8.) As an initial matter, the Government did not, in fact, argue that Philippe should be denied a two-point offense level reduction for acceptance of responsibility at sentencing; rather, both the Pimental letter and the pre-sentence report the Government submitted to the Court called for

14

application of a two-level offense level reduction for acceptance of responsibility. (See ECF No. 93 at 8; Presentence Investigation Report ("PSR") at 12.)[4] In addition, Philippe's counsel did object to the Court's denial of the acceptance of responsibility reduction during the sentencing hearing (Sen. Tr. 24:13:-25), and Philippe's counsel raised the issue on appeal (14-463 ECF No. 60 at 56-57, 74; see also 14-463 ECF No. 50 at 27-28). To the extent Philippe disputes the Court's refusal to apply an acceptance of responsibility reduction, that issue has already been disposed of on direct appeal. (12-cr-802 ECF No. 262 at 4-5.)

D. Element of Interstate Commerce

Philippe's fourth claim concerns his attorneys' failure to argue that he could not be properly charged under 18 U.S.C. § 1201 for his kidnapping of the female victim. (16-cv-7918 ECF No. 1 at 10-11.) In particular, he argues that no factual predicate had been established as to the statutory requirement that "the offender travel[] in interstate or foreign commerce or use[] the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense," 18 U.S.C. § 1201(a)(1), because the assailants did not decide to use a cellphone (i.e., an instrumentality of interstate commerce) until after the assailants had already "accosted and detained [the female victim], ransacked her apartment and stole[n] her property." (16-cv-7918 ECF No 1 at 10.)

---

[4] Though the Government argued in favor of imposing a life sentence, it did not argue that Philippe should be deprived the two-point reduction for acceptance of responsibility in determining his guidelines sentence. That deduction, when combined with the various enhancements the Government called for in the Pimental letter and the PSR, still provided for a guidelines sentence of life in prison. (See 12-cr-802 ECF No. 93 at 8; PSR at 26.)

15

Only at that point did Philippe and his co-defendants force the female victim to call the male victim in an effort to lure him into the apartment. According to Philippe, the cellphone was therefore used only in furtherance of the male victim's kidnapping, but not in connection with the female victim's kidnapping. (16-cv-7918 ECF No. 1 at 10-11.)

Philippe's argument is wrong as a matter of law. By requiring the female victim to use a cellphone that was capable of making interstate and international phone calls while she was being held against her will, Philippe and his co-assailants used an instrumentality of interstate commerce . . . in committing or in furtherance of the commission" of her kidnapping. Cf. United States v. Ramos, 622 F. App'x 29, 30 (2d Cir. 2015) (finding that interstate element of § 1201(a) satisfied where kidnapper used cellphone to call co-conspirator to speak about the kidnapping that he was in the midst of committing). It does not matter that the cellphone was used during the course of her detainment, rather than at the outset. Philippe's counsel was therefore not unreasonable in failing to object to the sufficiency of the kidnapping charge.

E. <u>Separate Charges for Male and Female Victims</u>

Last, Philippe argues that the Government should have brought separate conspiracy to commit kidnapping and kidnapping charges for each of the victims. (16-cv-7918 ECF No. 1 at 11-13.) Because the federal kidnapping statute refers to the unlawful holding of "any person," see 18 U.S.C. § 1201(a), Philippe contends that a kidnapping charge must relate only to a single victim. (See 16-cv-7918 ECF

16

No. 1 at 12-13.) Once again, Philippe's argument finds no support in the law. In this Circuit, "acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." United States v. Tutino, 883 F.2d 1125, 1141 (2d Cir. 1989) (citing United States v. Margiotta, 646 F.2d 729, 733 (2d Cir. 1981)). Here, as the Court made explicit during sentencing, the kidnapping, robbery and firearm offenses were all part of a "common criminal objective" to steal drug proceeds from the male victim. (See Sen. Tr. 13:21-24.) The Government therefore did not err in combining the kidnaping charges as to the male and female victims into one count for conspiracy to kidnap and one count for substantive kidnapping.

But even if the charges were unduly duplicitous, Philippe would nonetheless be unable to demonstrate prejudice. In determining Philippe's guidelines sentence, the Court applied the rules set forth in U.S.S.G. §§ 3D1.1, 3D1.2 and 3D1.3 for grouping counts, calculating the offense level associated with each group and calculating the total offense level applicable to the defendant's conduct. (Sen. Tr. 13:21-15:4.) In particular, the Court determined that the first four counts should be grouped by victim, with the firearm offense removed from the grouping analysis.[5] (Sen. Tr. 13:3-14:17.) The Court then (1) calculated the offense level for Counts One through Four with regard to the female victim; (2) calculated the offense level for Counts One through Four with regard to the male victim; and (3) calculated the

---

[5] Under the Guidelines, any count for which the statute specifies the term of imprisonment to be imposed and requires that the term run consecutively to any other term of imprisonment must be excluded from the grouping analysis. See U.S.S.G. § 3D1.1(b).

17

total offense level applicable to Philippe's conduct and assessed whether the acceptance of responsibility reduction applied. (Id. 14:22-21:11.) In short, because of how the Guidelines instructs courts to treat multiple counts involving multiple victims, the Court would have undertaken precisely the same process if Counts Three and Four had been broken up into separate charges for each victim, and Philippe therefore suffered no prejudice from his counsel's failure to object to the purportedly duplicitous counts. See Strickland, 466 U.S. at 694 (ineffective assistance of counsel claims must fail where petitioner cannot show reasonable likelihood that outcome of proceedings would have been different absent counsel's allegedly deficient performance).

This conclusion is made all the stronger by the Court's clear statement, during sentencing, that the Court's sentence was in no way tethered to the Guidelines:

> I use them as advisory, but the court imposes the sentence because [a life sentence plus seven years to run consecutively] is the appropriate sentence for this crime and for the related conduct. And so the court does find that even though it is a guidelines sentence, the court would impose the same sentence irrespective of the guidelines, so any future issues as to the guidelines should in fact be irrelevant to the court's ultimate decision. (Sen. Tr. 56:2-10.)

Thus, even if charging the kidnapping charges in separate counts for each victim would have resulted in a different guidelines range (which it would not), the Court nevertheless would have reached the same sentence. As a result, Philippe's claim for ineffective assistance of counsel must fail.

III.  CONCLUSION

For the reasons set forth above, petitioner's motion to vacate, set aside or correct his sentence is DENIED.  The Court declines to issue a certificate of appealability, as Philippe has not made a substantial showing of a denial of a federal right.  See Matthews v. United States, 682 F.3d 180, 185 (2d Cir. 2012).  The Clerk of Court is directed to terminate Philippe's petition at 16-cv-7918 ECF No. 1 and 12-cr-802 ECF No. 271 and to terminate 16-cv-7918.

SO ORDERED.

Dated: New York, New York
August 10, 2017

_____
KATHERINE B. FORREST
United States District Judge